& Buster's v. White Flint Mall. Mr. Scheidemann. Come on up. Good morning, Your Honor. My name is Ed Scheidemann, appearing on behalf of Appellant David & Buster's from DLA Piper. I have with me my colleague Paul Schmidt, also from DLA Piper, and Jay Tobin, Senior Vice President and General Counsel of Dave & Buster's. Your Honors, we are here today because we have alleged that the District Court below committed a number of reversible errors and made a number of decisions. First and foremost, the first point of error that we ascribed to the District Court below was that when it ruled that the continuing breach exception applied to a claim of breach of contract, Appellee alleged in 2006, in April of 2006, that we had breached a contract based on various facts and circumstances constituting a specific breach of a specific lease provision, a radius restriction clause. After that, the parties did nothing except continue to do business for over six plus years. Appellee, continue to accept our grant. The landlord reserved its rights. That's right. In its letter. In its letter. There's also an anti-waiver provision in the lease. Right. May I address the first, the reservation of rights? Sure. It is not a, our position is that a reservation of rights in your letter saying that you're in breach is not an agreement at all, for example, the statute of limitations. The question of whether or not that acts somehow from an equitable standpoint, we also claimed waiver. We asked for a declaratory judgment that the 2006 claim of breach was barred by either the statute of limitations or a doctrine of waiver. I think Maryland, on the waiver issue, I think the Maryland law is pretty crystal clear on that. And I would direct the court's attention to the Chirkoff case, which has long been law in the state of Maryland. And under Chirkoff, as your honors may recall, in that case you had a situation where a landlord claimed, a commercial landlord, that there was a breach, accepted the rent and wrote, I'm not waiving my rights under the acceptance of rent. That didn't even happen here. Somebody put, we reserve our rights with regard to the breach back in 2006. And the Maryland Court of Appeals in the Chirkoff case, and again, this is the waiver issue, not the statute of limitations issue, expressly held that since forfeiture of a breach of a covenant, forfeiture of a lease by breach of a covenant is not favored under Maryland law, any slight acquiescence in a breach will be considered as a waiver of the forfeiture here. The court also in the Chirkoff case made clear that Maryland's universal rules, that waiver of a forfeiture may occur by acceptance of rent after the lesser is on notice the breach has occurred. Now remember, the lesser here claimed that the breach had occurred in April of 2006 and reasserted, after six years of silence, reasserted the very same claim. Wouldn't your case be stronger if there was some kind of waiver or if the lease were written differently or if there hadn't been such an explicit, as Judge Agee points out, such an explicit reservation of rights? And the letter says the Anne Arundel's Mill Station constitutes a significant violation of the lease. As such, Lerner wants to clearly advise you that the landlord reserves all of its rights under the lease and at law to enforce the terms of the lease. Now, you know, as a matter of grace, they allowed the other Dave and Busters to go on for a number of years, but it's an odd kind of situation where they imbue the historic relationship of the parties. The landlord makes an accommodation here and gives you something that contractually it didn't have to give. So are we back in the situation of no good deed goes unpunished? That, you know, they try to help you out and slam. I think that is also, I would say, approach that question, Your Honor, with two lines. One is, I think if it's a true case of no good deed goes unpunished and what were the reasons and the factual circumstances, that is for the factual record to be developed if we're dealing in the context of waiver. Waiver law is pretty clear and whether it's no good deed goes unpunished and whether the district court should take that into consideration, the factual circumstances surrounding that. A clear case here, I remind the court, that this has all occurred when discovery was prohibited by the local rule in the state of Maryland, summary judgment ruling by the court. But getting back to the reason no good deed goes unpunished, we don't know why that happened. There could have been benefit to White Flint. They could have not cared about it. That particular geographic region could have been a number of reasons. Perhaps they concluded that here we have a commercial lease between two commercially sophisticated parties and we have a very specific provision in the lease that says there's no way. Well, the lease provision says, I believe a party will not waive the non-waiver provisions if they don't complain about it. And our position is, well clearly they're complaining about it. So in other words, if you look at the language of the non-waiver. They didn't complain about it after they wrote the letter. That's the point. Why would they be required to? Failure of either party to complain of any act or omission no matter how long the same may continue should not be deemed a waiver. I think they should be required to because Maryland Statute of Limitations is just as clear. They should be required to what? Complain about it and actually assert their rights. Maryland Statute of Limitations is clear. 5-101 says you shall bring a claim, a breach of contract within three years. And a claim accrues, again, this is Hornbook law in the state of Maryland. Does it make a difference what remedy White Flint is seeking? In what sense, Your Honor? They're not seeking damages here. They're seeking simply to enforce the terms of the lease. They did not seek damages below, but they sought to use in 2012 when facts and circumstances had changed, the old 2006 claim, the exact same claim, as a predicate for claim termination of the lease. That's what happened. In other words, in 2006, we had the claim in April that you violated Section 11.3 of the Radius Restriction Clause because you acquired, rebranded, and operated Jillian's Restaurant in Arundel Mills, sat on it for six years. Business changed. Apparently, White Flint had other ideas with respect. I'm wondering, when the point was debated in the briefs, I'm just wondering how much this particular statute of limitations applies when there are no damages sought under the contract, but simply to enforce what is an ongoing contract because the contract didn't simply end. As far as I know, it's never ended. It's never ended. The lease agreement, in all operative terms, for this purpose, as in this case, is still in effect. No. Well, yes, it was. Judge Below. Well, it was in terms of what we're looking at. I don't know whether it is at this very moment, but in terms of what we're looking at in terms of this case, the lease did not simply terminate with the initial breach. Right. It continued. That's right. That's exactly right. So if the lease continued, why couldn't the breach of the lease, the continued breach of the lease constitute a continuing violation for purposes of an equitable remedy? I think your case becomes a bit stronger if they're seeking damages, but they're not seeking that. They simply want to enforce a lease. I think, and it's our position, Your Honor, that for limitations purposes and for the purposes of 5-101 and when a claim accrues, there's no caveat or requirement that you must seek damages. You just must seek to enforce a right based on a particular breach. I also think Maryland law is pretty clear that once you have knowledge. The contract continued in effect. That's right. And if your contractual obligations continued in effect, why wouldn't your violation of those obligations constitute a continuing breach? I mean, that's what I'm struggling with. I think the way to look at it is, one, it's not a continuing breach, but it could be if there was a claim for damages, as Your Honor indicated, it would be continuing damages flowing from an original wrong that you can trace to a single set of circumstances. For example, the court below relied on the Kalliopoulos case and the Singer case. Kalliopoulos, as we said, was a laches case. It's pretty clear from the court. But the Singer case lays it out. And in that case, the court found the continuing breach exception applied because the particular issues there were energy outages. But the difference is, damages are retrospective in nature. And equitable relief, as is sought here, is oriented to the present and future, which would seem to make a continuing breach theory a better fit because you're dealing with a prospective, as opposed to a retrospective, request for relief here and with a contract whose ongoing nature was apparent. So I think I'm following you, Your Honor, and I think it boils down to the following sort of scenario. If that were the case and if that were a law, I think we would see the courts articulate in Maryland that statute of limitations, whether it's a lease, whether it's a restrictive covenant and any other sort of contract, would not run until the underlying contract has terminated, either naturally or through its own thing. So if you have a covenant, whether it's in a lease or other scenario, and it's a covenant to refrain from doing something, you would find that courts that say, well, it in effect is told until the underlying obligation of the entirety of the entire contract is finished. In effect, what you seem to be arguing is a question of fact. You can see this both ways. I mean, typically if you've got a breach of a material aspect of a contract, then someone's going to take some action rather than simply accept rents. And, of course, in the Maryland law, that alone I don't think is going to be enough except for rents. But there seems to be some more, at least for a jury, to make a determination that a waiver may have occurred here. A waiver, yes. And therein is something else I want you to at least differentiate because it seems like we're bouncing back and forth between statute of limitations and waiver. That's right. And some of the arguments that are there. But the focus here, to me at least, seems as though a waiver is an important issue from the outset, at least under Maryland law because even with the lease provision on waiver, I think you can – odd law to me, but I think you can waive a non-waivable provision. Hovnanian case. That's Hornbook in Maryland. And that being the factual situation here, I'm having a hard time understanding how it is that you can determine as a matter of law something has occurred here as opposed to there being a jury question from the perspective that you're given. That's exactly right. The court granted summary judgment on the waiver issue as well without even affording an opportunity for discovery. And you're exactly right. an inherently fact-specific inquiry. As we know, you just need continued performance under the contract after learning of the breach. If there was waiver, how would that affect statute of limitations? Two different animals. The Maryland legislature has been clear on statute of limitations. It's not an equitable doctrine. 5-101, the Maryland legislature simply said, once you learn of the fact and circumstances, and statute of limitations is to be strictly construed for a number of reasons. Uncertainty within the parties, so on and so forth. The point is made that you challenge the district court's denial of additional discovery. The point was made that when Whiteflint moved a summary judgment, you didn't ask for additional discovery, or at least there was no Rule 56 demotion file. Okay. I may address that because I know the time is winding down. Pardon me? I know the time is winding down if I may address that directly. We actually did, well, here's what, and this is an important thing for the court to clearly have its arms around. It probably already does. Summary judgment was granted in this case at a time when discovery was expressly prohibited. The movement in this case, Whiteflint cited, said nothing in the record. There was no claim or defense that was asserted under 56A. No record had been formed at this particular point. Both parties recognized the factual nature of the determination with it with regard to the radius restriction clause, not waiver or statute of limitations, although we did say waiver also is a fact-dependent determination. But of the factors that you had identified to the court, what other than the exact map of the radius clause, which I understand you don't raise here, of those other factors, what was not already available to you? Well, as I raised below. You could have obtained on your own. Right. The factual inquiry that was pertinent for this particular analysis was raised actually by Whiteflint first in their moving papers, and we agreed to that. Whether a significant economic purpose of the clause must be demonstrated for it to be enforceable. What I mentioned below during oral argument in front of the lower court specifically is, for example, discovery is needed on this issue. For example, Your Honor has posited, and Judge Titus went through a number of… Were you within the contractual radius, the second store? I believe it may have been within the contractual radius. The map was not in the record. I don't understand you. To follow up on Judge Agee's question, I don't understand you to contest that. Right. But to be enforceable, a radius restriction clause, it's a factual determination that a significant economic purpose must be demonstrated. How could there not be a significant economic purpose? No, exactly. Here you have the owner of a mall, and it collects a percentage revenue from the business that takes place at a particular restaurant, and if you have a competing facility nearby, that's going to draw customers away from the restaurant and the mall of the very same brand. That's right. And the question Your Honor just said was, is it competing? That is another analysis of which… Well, the lease defines that as a matter of law, what's competing. Well, the lease actually, and leases in particular, whether you have a non-compete restriction, whether it's in the employment context or radius restriction context, and when they're being examined… We decided you knew what you were getting into. But to answer your point, Judge Wilkinson, when you say that how could it not be a significant economic purpose, what I raised below was a simple fact, the facts that existed at that day. White Flint Mall is no more. If it was to keep certain revenues coming… You're trying to get something from us that you didn't get at the bargaining table. No, no, not at all. We're just trying to have a factual determination. I'm really not. To let the movement, the summary judgment movement here, plead and prove their case, which they have to do, but first submit under 56A a claim before the court upon which summary judgment can be granted in the first place. The 56D issue, Your Honor, I know time is coming down. Here's the issue with the 56D affidavit. 56D, the title itself says, when facts unavailable to the movement… All right, you've got some time for rebuttal. Can you bring that up on rebuttal? I can. Okay. Thank you very much. Thank you. Good morning, Your Honors. May it please the Court, I'm John James Brault for the appellee and defendant below, White Flint Mall. Our position is fairly straightforward. Judge Titus did the right analysis, thoughtful analysis, correctly applied Maryland law on the continuous obligation doctrine and continuous breach doctrine in Maryland, correctly, therefore, held that limitations was not a defense to our right to terminate the lease in view of the ongoing default. The Court, Judge Titus, correctly found there was nothing in the record, any evidence competent to support a reasonable inference that White Flint intended to relinquish its rights. The opposing counsel says, with regard to the issue of waiver, as I understand their argument, that there could not be a determination without some additional fact-finding for summary judgment purposes. So what's your response to that argument? Respectfully… I know you disagree, but you're going to tell us why. Understood. Our view is they didn't, first of all, in response to our initial motion, even make the argument that they needed discovery. This was an after-the-fact, once they lost on their cross-motion for summary judgment. Then they came back and said, we need discovery. But when they did, they didn't identify anything specific that they would need that they didn't already know. The purpose, or at least a primary purpose of discovery, is to find out what the other side knows or information the other side has that you don't have. Here, all the information was right there with Dave and Busters to the extent they had any fact, any communication with White Flint, anything that would lend itself to believe or to infer that White Flint's initial position that we're reserving our rights had changed. They could have come forward with it. And the fact that they didn't, I think, tells us everything we need to know. It doesn't exist. And to make this hollow request, we need discovery. And maybe something will come up. Well, this is using discovery as a weapon, not as a tool in litigation. Trying to hold White Flint, the landlord, hostage for a period of time while they go through who knows how many depositions, document requests, all with no hope generated or no hope indicated up front that they would serve any purpose. And I understand the court has said that ordinarily summary judgment should await discovery or until there's a full and complete record. But that's not an absolute, and it certainly doesn't exist when there's nothing to indicate that the record isn't already complete for the court to rule and that discovery wouldn't serve any purpose. Well, I mean, the fact of the matter is that you did send a letter and then you waited over six years to do anything. And even under Maryland law, the mere fact that you continue to receive rent, of course, doesn't mean you waived. But something more is going on here. I mean, you've got the whole relationship continues for over six and a half years, and you do nothing. And it would seem to me that at least from a perspective of waiver, I'm not sure that's something that should be submitted as a matter of law. Don't say you don't win, but this is a summary judgment statement. And the question comes up, because you can read this both ways. I mean, there's on one hand you can say, well, you gave them a benefit because you allowed them to continue to work on. But there's also the other side of this going, that things change economically. And when it becomes a good reason for you to come out of the contract, maybe that's why you decided to do it after six years. It could have been 15 years. It could have been 20 years. And I don't know what that means, but that seems to me to be a factual question. And, I mean, isn't that important? I mean, the time period we're dealing with here? Because if we're talking six months as opposed to 20 years, and you sit and wait for 20 years for something to happen, because six is no different than 20, I would think, in terms of time. Time is not the issue here. Then if it's a continuing breach, you just let it go on for 20 years. You keep receiving all the benefits, everything from it. You don't say anything else for six years. Then all of a sudden you bring it up. Why is that not a question for the jury, at least for waiver? First of all, it's not a jury trial. But for the fact finder, I understand what you mean. In terms of the declaratory judgment at this stage of the game. I mean, isn't that not? Because we're dealing with summary judgment. So if it's not a jury, but in terms, is it appropriate for summary judgment is the question. And I would submit, respectfully, there's no factual dispute. There's nothing for any fact finder, jury, or court to say, I can believe fact A or I can believe fact B. I can believe it took six and a half years and you did absolutely nothing during that time period. Because legally we had no obligation to do anything. We had in our contract. My question is, how long? Is it 20 or 30 years can you do this? Does it ever become a jury question? Does waiver mean anything in this context? In this context, with this record, no, it does not. Because we have the lease provision that says you have this obligation and it's continuing. And we don't have to do anything about it until we're ready. When we're ready, we can do it. The point is they were on notice through both the lease provision and the reservation of rights. That they were at risk. They knew what the landscape was. Nobody was pulling the wool over anyone's eyes. They understood. It's not ambiguous. Normally, when we go to trial, we do so because the contractual provision is ambiguous. Or the course of dealings between the parties was ambiguous. But here, reservation of rights was clear. The contractual provision is clear. And as Judge Agee pointed out, these are two sophisticated business entities. This is not a grandmother being taken advantage of by a big, powerful company. The parties know the deal. They know the game. They know what their legal obligations are. The legal obligations are not ambiguous. They are clear. And one assumes, and any businessman would assume, well, we can go ahead, but nothing is guaranteed here. They knew they were proceeding at their own risk. Exactly, Your Honor. And parties can contract a way around the statute of limitations, right? Which means parties can, just by their actions, even though in a sophisticated world, you simply find a breach and you just take your time and just wait until it's economically to your advantage and then enforce it 10, 20 years from now. Because you say, that was a breach 10 years ago. I did absolutely nothing because I now have this. I can hold this over your head for the next 10 years, and I don't have to do anything. I don't even claim damages. And the reason I don't claim damages is because probably you've been accepting rent and you probably don't, I don't know, maybe you didn't have it at that point. I don't know. Well, the answer is, under Maryland law, we have, in terms of limitations, we have the absolute right to choose when we seek to enforce our contractual rights. We don't have to do it within three years of the initial onset. This is a breach that they're doing every day. Now, I would grant your honor, if they stopped, if they suddenly said, we're getting rid of that Arundel Mills store because we don't want to be violating our agreed upon covenant, then at that point, we have three years. But that's not our facts here. They continued and continue on the record you have before you to this day to intentionally, for their own economic benefit, violate this covenant. And it seems to me to turn that into their request that ignore all that, and because we didn't take action promptly when we first knew about it, they're free for the next 19 years, in their view, to continue to violate a very important covenant in a very substantial lease, which, as your honors have said, was negotiated by probably some extremely sophisticated lawyers and business people who know an awful lot about commercial leases. But it is true that rarely in Maryland law is waiver a matter of a question of matter of law. Typically, it's a question of fact. And there's lots of issues that are questions of fact, but when you don't have disputes of the fact, it is a matter of law. I grant you cases say it's ordinarily a factual issue, but that's because in ordinary cases there's competing facts as to whether there's waiver or not. There isn't here. I mean, there can be no doubt as to White Flint's intention to preserve all its rights. The question of waiver, I would turn it into this. They're using waiver to equate to an agreed-upon modification of the lease. That is, by intentionally waiving your right to ever enforce this provision, you're now agreeing that they can do this violation in perpetuity. No discussion, no evidence whatsoever that that subject was even broached by Dave and Buster's. Well, your waiver of right, at least your letter in terms of waiver, does that extend in perpetuity? You sent a letter stating that you were not waiving your right. Does that extend in perpetuity? It does. So long as the contract is in effect, it is reserved with the contract. Once the contract ends, then the covenant disappears on its own. Well, if we assume for purposes of argument that there's not a waiver, as I understand the opposing counsel's argument, at least on brief, they say that the first time that they opened this other facility in Anne Arundel County, or at least as of the time the landlord became aware of it, that that was a one-time breach and everything after that is just the continuing effect of that breach. You disagree. The opposing counsel also says that if you can't decide between these two competing theories, certify it to the Maryland Court of Appeals. What's your reaction to that? I think that the Maryland law in Singer and Kaleopolis is perfectly clear here. I don't think this court needs to ask the Maryland Court of Appeals to decide something that it's already decided. Your Honors have the law set forth in Singer and Kaleopolis. What Dave and Buster's, I think, seeks is to disregard that law and do not apply a continuous breach analysis and treat this as if it's a single breach. A single breach might be the case if the covenant was not to purchase some restaurant. Then you could say it's a one-time breach and there may be future damages. But the covenant here, and the key is what's the language of the covenant, we agree not to operate during the entire time that this lease is in effect. That's an ongoing promise that they're going to refrain from operating, and every day they open their doors as a Dave and Buster's in a competing mall, down to the Rundle Mills Mall, is a new breach. And it's not a continuous act to just continue to do something that you've been doing a whole while. We should interpret the operation of a business as being a different breach every day and not just continuous? Each successive breach in the course of the continuing or recurring breaches was constantly creating fresh causes. When did it stop? When did it stop? It's going on all night long, all the time. It's there the whole time. When does the breach stop and start each time? That's my point, Your Honor. Whether it's they close at midnight, open at 8 a.m., or it's ongoing, there's no material difference. Under Maryland law, it's a continuous obligation that's being breached continuously. And because it's being breached continuously, a cause of action, fresh cause of action, accrues on a daily basis. That is the, well, I'm sure I'm going to butcher my Latin, but they die in diem. The covenant, they die in diem. Even that point, though, is not as clear as we want it, which is why you asked to certify if we decide to go the other way, or if we are not clear on it to the Maryland Court of Appeals. Is that the reason you asked for that, as an alternative? To be honest, I'm not sure I asked for it as an alternative, but I don't think it's necessary because I do think Calliopolis and Singer together are clear, are sufficiently clear that it doesn't warrant that. But it's not as if Dave and Buster's is in some sort of powerless or disadvantaged or put upon decision here. It's not a matter of law so much as it is a matter of business decision. You can, they had an election to make after the Reservation of Rights letter. They could have continued as they decided to do, or they could have said, we don't want to live with the business uncertainty because at some future point, White Flint could invoke its rights under the lease, and it might be very inconvenient at that time for us to have to move or leave the premises. And just as a matter of business practice, we think it's not worth it to continue operating with this kind of financial uncertainty over our heads. But this isn't a matter of law. It's a matter of business decision that businesses confront every day, which is to take steps to clear yourself of legal uncertainty of all kinds or to continue operating with the legal uncertainty in effect. That's a business matter. That's not a legal matter. They faced a business decision, and they made a certain business decision, and that's fine. They got the benefits of it. They live with the consequences of it. And I just don't see that we jump in as saviors when someone makes a poor business call, or I'm not sure it even was a poor business call. I'm not sure they didn't benefit substantially from this. But this is rumble-tumble business as it plays out in marketplaces and corporate planning every day. I would point out a couple other things while I still have some time left. While you point them out, discuss also why it would not be that the decision not to enforce could be a business decision. The decision not to enforce? Yes, as much as it is the decision to enforce. We have the right under the contract that these parties entered into to terminate when we see fit. And we had that right to do that. We shouldn't be penalized and the intentional wrongdoer rewarded for giving them a grace period. I would also note they had the opportunity to cure, and they chose not to. Obviously, for economic reasons themselves, they didn't want to cure. But they made a business decision. You made a business decision. Companies make business decisions. You may have made a business decision not to enforce the lease or to enforce the lease at a time which was propitious for your business. Companies do that all the time. This is a question of two entities making business decisions in light of the legal framework they've set forth for themselves. And each of them has the right to make a business decision in a way that the corporate board believes benefits itself. And that doesn't constitute a waiver. And limitations is not a bar here. It's a business transaction. They made their decision. We enforced our rights under the contract as we were entitled to do. All right, thank you. Thank you very much, Your Honor. One more question. Sure. Correct me if I'm wrong, but as I understand, at least from the briefs, there was a period of time when the parties were negotiating over what to do with the second Dave and Busters. And for whatever reason, those negotiations didn't come to fruition. That's correct. Is that right? Okay, thank you. That is correct. And that's what led to their preemptive lawsuit. Thank you. Thank you. With the Court's indulgence, a couple of quick points. With regard to the multiple breach scenario that was just discussed, about a new breach occurring every day, so on and so forth, I'd just like to put out what if this was an open 24-hour establishment? Do you have a breach still occurring because nobody's opening the door? Or did the cause of action accrue? Under Maryland law at the time, a party knew the facts and circumstances of the breach. I also heard, for example, Your Honor, Judge Wilkinson said they knew the risk. They knew the risk. They continue to operate anyway. It may have been a business decision, so on and so forth. Can you just hang it over their head and bring it out six, seven years later? I would submit to this Court that that's the very purpose of the statute of limitations. When you make business decisions, we don't know whether Dave and Busters knew that there was a risk because the parties continue to operate. There's no problem. Everything's simpatico, you know, by implication, which waiver can be found putting away the limitations issue. A waiver can be found by implication and usage. There are two Maryland cases on it. One deals with a power outage type question, which seems to be somewhat distinctive. What about the other one? Is that dictated in that case? Calliopolis is a laches case. The Court of Appeals in Calliopolis in 1928 expressly said, listen, the contract we're dealing with here is a specialty, so we don't even need to look at the limitations issue. Therefore, we're going to go in equity and look at laches. Why didn't you seek to get the terms of the contract changed? I mean, the two parties were operating under the contract. They were paying rents under the contract. They were paying the percentage that was due to White Flint stayed the same under the contract. The point is the contract didn't just cut off at some past point in time. The parties' everyday business relationships were governed on an ongoing basis by the contract. You say, well, this is a statute of limitations issue, but this is a live, going, it's a living and breathing document that you're operating under, and it seems to say, to invoke the statute of limitations to this living, breathing document that is governing the terms of the relationship between the parties on an ongoing basis. I don't get it. Here's how Maryland law, I think, addresses that particular issue. We haven't changed the terms of the contract. For example, the radius restriction clause, Judge Wilkinson, still exists. If we open store number two and they had a problem with that, they could still enforce the radius restriction clause. But what Maryland law says is with regard to this particular breach, this particular location, you were aware of the facts and circumstances in 2006. Therefore, if you've got a problem with it, you've got to bring your cause of action in three years. And when you talk about us knowing of the risk, how do we know that somebody at White Flint didn't give the nod, nod, wink, wink. We just had lunch with them. It's okay. Don't worry about that. We sent you the letter two years ago or four years ago. And then somebody at Dave & Buster's, as business people do, say, you know what, we understand that they're not going to enforce that, and don't worry about it, because if they would have, if it's such an important covenant, as I just heard, the limitations. You have a stronger point on that if they fail to pay monies due in owing under the contract, maybe something like that. You have a purely retrospective question of monetary damage or make whole relief or something. But that's, the problem is that's not what we have. That's not what we have. Right. With the undisputed record, what we have is, and I'll leave the breach issue at this, is that there is no dispute that the claim accrues under Maryland law when you know the facts and circumstances of a breach. There's no dispute that they knew about it in 2006. There's no dispute that they kept it in their back pocket until there was an advantageous circumstance that came their way. Somebody probably looked in a file and said, ah-ha, we want to get some tenants out of here and look what we have here, and we'll just go ahead and use this. And the statute of limitations is to prevent that very set of circumstances. Would you like to hear about the Rule 56 issue? Thank you. Okay. Thank you. We'll come down and greet counsel and take a brief recess and then take on our next two cases. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, G. Steven Agee, James A. Wynn, Jr.